CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 14 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ARNOL M. LINKOUS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:05cv009 |
| COMMISSIONER OF SOCIAL SECURITY, | ) By: Hon. Michael F. Urbanski |
| Defendant, | ) United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Arnold M. Linkous ("Linkous") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross-motions for summary judgment. Having reviewed the record, and after briefing and oral argument on January 13, 2006, the case is now ripe for decision.

I

At the time of the ALJ's decision, Linkous was 60 years old, and, as such, was "closely approaching retirement age." 20 C.F.R. § 404.1563. Linkous had a limited seventh grade education and had worked for Hubbell Lighting, Inc. for many years, from 1977 to 2000, as a tester and an assembler. (Administrative Record, hereinafter "R." at 135) Plaintiff described this job as "assembly work, used a tester to measure voltage and amps. I completed daily parts log. Assembled socket and starters into lights." (R. 109)

Linkous filed his first application for DIB benefits on October 13, 1999, with a protective filing date of February 8, 1999, alleging he became disabled on due to multiple joint pain. (R. 95) Linkous traced the onset of his impairment to an accident at work in November, 1998, pulling a lever on a machine. Linkous described the incident as "something popped in my neck. And immediately I had very sharp pains going down my arm." (R. 407) In his first application for benefits, Linkous described the impact of his condition on his ability to work as follows: "I stand constantly head bent forward over assembly line assembling parts using hand and arms constantly. I cannot use my arms constantly any more and there is no work for me without it." Id. After a course of physical therapy, testing revealed a herniated disc in his neck, (R. 162, 238), and a cervical diskectomy was performed by Dr. James Vascik on February 8, 1999. Linkous tried to return to work following his surgery, but was unable to do so after July 31, 2000. Linkous' first application for DIB was denied in January 2001, (R. 33-42), after which he appealed that decision to the Appeals Council.

While that appeal was pending, Linkous applied again for DIB, this time with the result that he was found to be disabled by the state agency on January 24, 2002. (R. 487) In his second application for benefits, Linkous stated: "I was placed on restriction of my normal job duties, and I was unable to attend work on a regular basis. I couldn't do any heavy lifting, or bending down, no air tools. I had gone back to work in March of 2000, but, due to all the chronic pain in my back, neck, hands, feet, I was unable to perform my job duties and had to stop working in July, 2000." (R. 509)

At the Appeals Council, the applications were combined, and the case was remanded to evaluate plaintiff's past relevant work, gather updated and available medical records, obtain

2

supplemental vocational expert evidence to clarify the effect of the assessed limitations on Linkous' occupational base, and determine the existence of any transferable skills. (R. 47) On remand, the ALJ again denied benefits, finding that Linkous could do his past relevant work. (R. 17-25)

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## II

The principal issue on appeal is whether the ALJ's determination that Linkous could perform his past relevant work as a lighting tester and assembler is supported by substantial evidence. As it is clear that the ALJ's decision in this regard was not supported by substantial evidence, this case must be reversed and remanded for further administrative consideration.

The ALJ decided that Linkous "retains the residual functional capacity to lift up to 50 pounds and stand, walk, and sit for prolonged periods. These functional abilities are consistent with a full range of light and medium work. The claimant would also need jobs not requiring repetitive lifting above the shoulders." (R. 22) This determination of plaintiff's residual functional capacity ("RFC") is based primarily on the evaluation of one state agency physician,

3

is contradicted by another, and is inconsistent with the bulk of the medical evidence from Linkous' treating physicians. As such, it does not meet the substantial evidence standard.

Only one physician's opinion in the record supports the RFC found by the ALJ. That opinion was the result of a medical records review done by a state agency physician, Dr. Frank M. Johnson, on November 18, 1999. Dr. Johnson found that Linkous could lift 50 pounds occasionally, 25 pounds frequently, could stand/walk or sit for 6 hours and had unlimited ability to push and/or pull. (R. 241) This review noted that Linkous had some limitation in reaching in all directions. (R. 243) Dr. Johnson's review referenced the functional capacity evaluation done by Francine Noel-Ford, a physical therapist, on August 24, 1999 who tested Linkous and determined that he "qualifies to work 8 hours/day at the MEDIUM physical demand level." (R. 186)

On the other hand, a different state agency physician, Dr. Richard M. Surrusco, found Linkous, based on his second application, to be disabled on January 24, 2002. (R. 487) Dr. Surrusco found credible plaintiff's allegations that he could stand less than 15-20 minutes, sit only 15 minutes, lift only 15-20 pounds, and that he suffered from right shoulder and arm pain with activity, numbness in his fourth and fifth fingers in his right hand, and weakness in both hands. (R. 458)

The evaluations of Linkous' treating physicians more closely parallel the assessment of Dr. Surrusco than of the earlier evaluation by Dr. Johnson. Linkous was treated for many years by his family doctor, Kazimierz Sowinski, who opined that plaintiff's condition precluded employment on a sustained basis. (R. 343) Dr. Sowinski treated Linkous for a variety of ailments, including multiple joint pain, over a long period of years dating back to 1992.

Unfortunately, many of his office records are illegible. In one typed note dated May 2, 2001, however, Dr. Sowinski opines that "[d]espite surgery and medical treatment he is symptomatic and his painful condition precludes gainful employment on a sustained eight hours per day, forty hours per week basis, either sedentary, light, medium or heavy physical activity." (R. 343)

Likewise, Dr. Kerry B. Donnelly, an orthopedic surgeon who treated Linkous for several years, opined that Linkous could not return to work at Hubbell Lighting. Dr. Donnelly treated Linkous for arthritis and musculoskeletal complaints and performed a right tennis elbow decompression in 1997. (R. 281-86, 316-20) On March 13, 2001, Dr. Donnelly wrote a letter stating that Linkous has multiple musculoskeletal problems, including "chronic neck pain with intermittent wrist and hand discomfort and numbness in both hands of uncertain etiology." (R. 352) Dr. Donnelly noted continuing problems with his right elbow following surgery and bilateral painful flat feet. Id. As a result, Dr. Donnelly wrote that "[i]t is my opinion that due to the combination of problems that Mr. Linkous is disabled from his regular job as a tester at Hubble (sic) Lighting. I suspect that he is going to be permanently disabled from this type of work and in any other type of work that involves significant standing or walking. It is certainly feasible that he could do very light sedentary work but I would defer opinion on this until after Dr. Chandler's evaluation."[1] Id.

The ALJ considered the opinions of these two treating physicians, but chose not to fully credit them. The ALJ found that Dr. Sowinski did not identify any specific clinical findings or tests to support his conclusion, nor did he identify any specific work restrictions or functional

---

[1] Dr. Chandler was to see Linkous for his flat feet. Id.

5

limitations.[2] (R. 19) The ALJ also noted that while Dr. Donnelly indicated that Linkous could not return to work as a tester at Hubbell Lighting, there was no indication in the record that he was aware of the vocational requirements of that job. Id.

The ALJ also relied on one line from a note by Linkous' treating neurosurgeon, Dr. James Vascik, for the proposition that Linkous should give his "light-duty work" another try on February 15, 2000. (R. 333) The problem with this reliance, however, is that while it is reflective of what Dr. Vascik thought on that day, the ALJ's RFC determination is not consistent with a broader functional capacity evaluation done by Dr. Vascik a few months later. On June 28, 2000, Dr. Vascik completed a Work Capability Form for Hubbell Lighting indicating that Linkous could work, including standing/walking 3-4 hours a day and sitting 5-6 hours per day. Dr. Vascik indicated that Linkous could lift or move zero to five pounds 40% to 70% of the time and could lift or move five to twenty-five pounds 15% to 40% of the time. Dr. Vascik's assessment, therefore, does not support the ALJ's conclusion as to Linkous' RFC. Dr. Vascik

---

[2] In this regard, the decision of the Commissioner makes no reference to a Medical Assessment of Ability to Do Work-Related Activities (Physical) completed by Dr. Sowinski on March 5, 2003 and submitted to the Appeals Council on March 11, 2003. (R. 483-85) As such, this report contains just the sort of specific functional findings the ALJ's opinion suggested was lacking from Dr. Sowinski's evaluation. While this assessment was prepared after the ALJ issued his second decision, there is no indication that it was ever considered by the Appeals Council as it is not cataloged as being received and considered by the Appeals Council in its Order of November 23, 2004. (R. 12) While the Appeals Council did not indicate that it had received or considered this additional information, it is clear that it was submitted prior to its determination to deny review in this case as it was contained in the third supplemental record certified by the Commissioner in this case on November 17, 2005. Although this assessment was apparently received before the Appeals Council denied review, there is no indication that the Appeals Council ever considered this assessment. In this regard, Linkous' argument that the state of the record makes it impossible to determine just what the Commissioner considered in this case rings true. For this reason alone, a remand is appropriate under Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997).

6

Case 7:05-cv-00009-mfu   Document 30   Filed 02/14/06   Page 6 of 9   Pageid#: 122

noted that he could reach above his shoulder level but was not able to work with arms extended at waist or shoulder level. Dr. Vascik added that Hubbell may need to vary his work so that he is not lifting or doing any supinating-pronating activity. (R. 331-32)

A subsequent consultative examination done by Dr. Charlene Zhao on November 30, 2001, also suggests a RFC at a level below that found by the ALJ. Dr. Zhao's report indicates that "overall, [Linkous] can not walk less than a quarter of a mile at a time, can stand less than 15 to 20 minutes, can sit for 15 minutes or less and he can only carry 15 to 20 pounds or less." (R. 449)

In his second decision, the ALJ notes that regardless of whether Linkous' specific RFC was at the medium or light level, as a practical matter, the real issue is whether Linkous can perform his past relevant work as a lighting tester or assembler. (R. 22) In that regard, the ALJ noted that "[a]t the supplemental hearing, the claimant testified that his prior job as an assembly tester required standing for eight hours and involved repetitive work with air tools. The job also required some assembly and wiring. The claimant testified that the job did not require heavy lifting with average lifting of 15 pounds and occasional lifting of 30 pounds." (R. 23) Based on this description of the job and the description provided by Hubbell, the ALJ decided that Linkous could return to his past relevant work. While consistent with the opinion of state agency physician Dr. Johnson, (R. 241), this conclusion is inconsistent with the subsequent opinion of state agency physician Dr. Surrusco, (R. 487), consultative physician Dr. Zhao, (R. 449), and the opinions of treating physicians Drs. Sowinski and Donnelly, (R. 343, 352, 483-85). Importantly, it is also inconsistent in two respects with the work capability assessment done by treating physician Dr. Vascik, who indicated that 40-70% of the time, Linkous could only lift or move

7

zero to five pounds of material. (R. 331) Further, while Linkous testified that his job required the use of air tools, Dr. Vascik's evaluation specifically precluded use of air tools, (R. 331), an aspect of the past relevant work not considered by the ALJ.

Given the treating physicians' evidence in this case and the standard for evaluating such evidence, there is simply no way on this record to find that the decision of the Commissioner that Linkous could perform his past relevant work is supported by substantial evidence. Social Security regulations provide that the opinion of a treating physician is entitled to a high degree of deference. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1527. As such, the decision is reversed and remanded for further administrative consideration.

In particular, given Linkous' age and previous work experience, both Social Security's grid rules and rulings require an assessment of the transferability of his skills. See Appendix 2 to Subpart P of Part 404, Medical-Vocational Guidelines, §§ 202.01-03. At the second administrative hearing, a vocational expert ("VE") testified that the job of tester was unskilled, and that there were no transferable skills relating to the job of anodizer. (R. 397-399) As to the job of assembler, however, the VE testified at both administrative hearings that there were transferable skills, but did not elaborate further.[3] (R. 438, 397-99) Grid rule 202.00(f) provides "[f]or a finding of transferability of skills to light work for individuals of advanced age who are closely approaching retirement age (age 60-64), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."

---

[3] This was true at the second hearing even though one basis of the Appeals Council's remand order was "to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations under the guidelines in Social Security Ruling 82-41." (R. 47)

8

Appendix 2 to Subpart P of Part 404, Medical-Vocational Guidelines, § 202.00(f). Likewise, Social Security Ruling 82-41 provides that "[i]n order to establish transferability of skills [for persons over 60], the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." Because the ALJ determined that Linkous could perform his past relevant work, which the court has determined is not supported by substantial evidence, the assessment of transferability of skills required under grid rule 202.03 and SSR 82-41 was not done. This issue should be fully evaluated by the Commissioner on remand.

### III

Therefore, this case is reversed and remanded for further administrative consideration consistent with this opinion.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 13th day of February, 2006.

Michael F. Urbanski
United States Magistrate Judge

9